**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**


**THEOSHAMOND NORMAN (#407759)**                     **CIVIL ACTION**

**VERSUS**

**WARDEN HOWARD PRINCE, ET AL.**                     **NO. 10-0605-JJB-CN**


## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, November 2, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

THEOSHAMOND NORMAN (#407759)                                    CIVIL ACTION

VERSUS

WARDEN HOWARD PRINCE, ET AL.                               NO. 10-0605-JJB-CN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the cross-motions for summary judgment of the plaintiff and defendants Howard Prince, Clyde Spain and Benoit Dinvant, rec.doc.nos. 43 and 45.

The pro se plaintiff, an inmate previously confined at Elayn Hunt Correctional Center ("EHCC"), St. Gabriel, Louisiana, brought this action pursuant to 42 U.S.C. § 1983 against Warden Howard Prince, Lt.Col. Clyde Spain, Sgt. Benoit Dinvant and Cadet Speck, complaining that the defendants violated his constitutional rights at EHCC on March 11 and 16, 2009, by failing to protect him from harm at the hands of a co-inmate, resulting in the plaintiff sustaining injury on the latter date.[1] The plaintiff further complains that the actions of defendant Spain were motivated by retaliatory animus.

The plaintiff moves for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, the unsworn statement of co-

---

[1]     An attempt by the United States Marshal's Office to serve "Cadet Speck" has proven unsuccessful because service of process has not been accepted on behalf of this defendant by the Louisiana Department of Public Safety and Corrections. Specifically, a representative of the Department has indicated that they are unable to identify this individual. See rec.doc.no. 9. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against "Cadet Speck" be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon this defendant.

inmate Noel Dean, the sworn statement of co-inmate Ronald Williams, a copy of the plaintiff's Enemy List, copies of two (2) disciplinary reports authored by defendant Benoit Dinvant, dated March 16, 2009, charging the plaintiff and co-inmate Barry Davis with "Fighting", copies of two (2) memoranda authored by Lt. Keith Robinson, dated April 9 and July 16, 2009, respectively, copies of two (2) memoranda authored by defendant Clyde Spain, dated August 4 and 9, 2009, respectively, a copy of an undated memorandum authored by defendant Sgt. Benoit Dinvant, a copy of an undated memorandum authored by Capt. W. Jarrell, a copy of a memorandum authored by Msgt. Clint Dunn, dated April 9, 2009, and copies of excerpts from the plaintiff's administrative remedy proceedings.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's administrative remedy proceedings, a certified copy of excerpts from the plaintiff's medical records, a copy of the plaintiff's Enemy List, copies of two (2) disciplinary reports authored by defendant Benoit Dinvant, dated March 16, 2009, charging the plaintiff and co-inmate Barry Davis with "Fighting", copies of two (2) memoranda authored by defendant Clyde Spain, dated August 4 and 9, 2009, respectively, and the affidavits of Rhonda Z. Weldon, Dr. Preety Singh and defendants Benoit Dinvant, Howard Prince and Clyde Spain.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. Celotex Corporation v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Supporting affidavits must set forth facts which would be

admissible in evidence, and opposing responses must set forth specific facts showing that there is a genuine issue for trial.  If the moving parties carry their initial burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that he is entitled to a verdict in his favor. <u>Anderson</u>, <u>supra</u>. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  <u>Celotex</u>, <u>supra</u>.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. <u>Little</u>, <u>supra</u>, 37 F.3d at 1076.  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.  <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257 (5th Cir. 1994), <u>cert. denied</u>, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

    In his Complaint, the plaintiff alleges that on March 11, 2009, defendants Clyde Spain and Benoit Dinvant sought to place an inmate in the plaintiff's cell, notwithstanding that the plaintiff advised the defendants that he could not live with the co-inmate.  Instead of acceding to the plaintiff's request, defendant Spain told the plaintiff

that the plaintiff was not allowed to "pick or choose who [he] could live with", and ordered the plaintiff to be transported to the mental health department for evaluation. When the mental health department determined that the plaintiff was not in need of medical attention, the plaintiff was returned to his cellblock and was placed in the cell with the referenced co-inmate. The plaintiff asserts that this was a violation of his constitutional right to be free from a threat of harm or violence at the hands of a co-inmate. The plaintiff further complains that five (5) days thereafter, on March 16, 2009, when he returned to his cell in full restraints after a recreation period, he was attacked by the co-inmate, whose punches caused "pain to shoulder, arm and back, along with small scar on back of neck." As a result of this confrontation, defendant Spain allegedly had the plaintiff transferred to the Louisiana State Penitentiary on March 19, 2009. Finally, the plaintiff contends that the actions of defendant Spain were undertaken in retaliation for a lawsuit which the plaintiff had filed against this defendant in 2008.

In response to the plaintiff's allegations, the defendants contend that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff will be unable to show that they have participated in any violation of the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. Hale v. Townley, 45 F.3d 914 (5th Cir. 1995). As enunciated in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights.

Second, the district court looks to whether the rights allegedly violated were clearly established.  This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition.  The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful <u>in the situation which he confronted</u>.  <u>Id.</u>  In the instant case, the defendants assert that the plaintiff's claim fails in the first instance because the plaintiff will be unable to establish that the defendants have participated in any violation of the plaintiff's constitutional rights.[2]

Undertaking the <u>Saucier</u> analysis, the Court concludes that the defendants' motion is well-taken, that the plaintiff's evidentiary showing is insufficient to overcome the defense of qualified immunity, and that the plaintiff's claims should therefor be dismissed on this basis.

Initially, the Court notes that the plaintiff has named defendants Spain and Dinvant in both their individual and their official capacities and has named Warden Howard Prince only in the defendant's official capacity.  Section 1983, however, does not provide a federal forum for litigants who seek a monetary remedy against state officials acting in their official capacities.  <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).  Specifically, the

---

[2]     The United States Supreme Court has recently held that rigid chronological adherence to the <u>Saucier</u> two-step methodology is no longer mandatory.   <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  Although the <u>Saucier</u> methodology will be "often beneficial", the <u>Callahan</u> Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis.

United States Supreme Court has made clear that a suit against a state

official in the defendant's official capacity for monetary damages is

treated essentially as a suit against the State and is therefore barred

by the Eleventh Amendment.  <u>Hafer v. Melo</u>, 502 U.S. 21, 112 S.Ct. 358,

116 L.Ed.2d 301 (1991).  Accordingly, while the plaintiff's claim for

monetary damages asserted against the defendants in their individual

capacities remains viable, his claim against the defendants in their

official capacities is subject to dismissal.  Therefore, inasmuch as the

plaintiff has named Warden Prince <u>only</u> in that defendant's official

capacity, defendant Prince is entitled to dismissal from this proceeding.[3]

---

[3]     Further, even were the plaintiff's Complaint interpreted to also name defendant Warden Prince in the defendant's individual capacity, the claim asserted against defendant Prince would be subject to dismissal in any event.
    First, the plaintiff has failed to allege any personal involvement by defendant Prince in the events alleged.  In this regard, in order for there to be liability on the part of a supervisory official, it is necessary for an inmate-plaintiff to allege either direct personal involvement by the official in the constitutional violation alleged or some causal connection between the supervisory official and the violation.  <u>Lozano v. Smith</u>, 718 F.2d 756 (5th Cir. 1983).  Any allegation that defendant Prince is responsible for the actions of his subordinate officers or co-employees is alone insufficient to state a claim under § 1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  Accordingly, inasmuch as the plaintiff has failed to allege that defendant Prince was personally aware of the plaintiff's placement in the cell with the offending co-inmate or had any involvement in the events of March 11 and 16, 2009, the plaintiff fails to state a claim of constitutional dimension against defendant Prince.
    In addition, to the extent that the plaintiff complains that defendant Prince failed to take action after learning of the events complained of – through the plaintiff's filing of one or more administrative grievances – the law is clear that there is no constitutional violation in any alleged failure to investigate and/or respond favorably to an inmate's administrative grievances.  <u>See</u> <u>Geiger v. Jowers</u>, 404 F.3d 371 (5th Cir. 2005).  <u>See also</u> <u>Anderson v. Pratt</u>, 2002 WL 1159980 (N.D. Tex., May 29, 2002) (finding that receipt and denial of an inmate's grievance by the warden's office did not establish personal involvement or liability on the part of the warden).
    Finally, to the extent that the plaintiff's Complaint seeks injunctive relief against defendant Prince – in the form of a transfer from his present place of confinement back to EHCC – this claim, while not precluded by the Eleventh Amendment (because an official-capacity claim for injunctive relief is not seen to be a claim against a state,

Further, inasmuch as the plaintiff has named defendants Spain and Dinvant in _both_ capacities, his claim for monetary damages against these defendants in their official capacities should be dismissed, but his claim asserted against them for monetary damages in their individual capacities remains viable.

Turning to the plaintiff's claims asserted against defendants Spain and Dinvant in their individual capacities, it appears that the plaintiff first asserts that it is improper, as a matter of law, for prison officials to place two or more inmates who are classified to maximum security confinement in a single cell because these inmates "are considered violatile [sic] and/or have a history of mental health conditions." This claim, however, is not one of constitutional dimension. In the first place, the law is clear that the mere fact that inmates may be double-celled for a period of time does not, as a matter of law, state a claim of constitutional dimension. It has been held that double-celling, without more, does not violate an inmate's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). See also Duncan v. Puckett, 91 F.3d 137 (5th Cir. 1996) (claim of being placed "in a single cell with another inmate" dismissed as frivolous); Higgins v. Jefferson Parish Prison, 1998 WL 24137 (E.D. La. March 7, 1988) (claim of "being housed in a cell with another inmate which was originally designed for single occupancy" dismissed as frivolous). Further, this Court will not second-guess the decision of

---

Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); 15 Am.Jur.2d Civil Rights § 101), is also without merit. An inmate has no justifiable expectation that he will be incarcerated in any particular prison within a state, Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and this Court will not involve itself in the decision of prison officials to transfer inmates between institutions located within the State.

prison officials to classify inmates in the manner deemed best appropriate.  Prison administrators are afforded broad administrative and discretionary authority over the institutions they manage, and lawfully incarcerated persons retain only a narrow range of protected liberty interests.  Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).  So long as the conditions and degree of confinement are within the sentence imposed on an inmate and do not otherwise violate the Constitution, the Due Process Clause does not itself subject a prison official's treatment of an inmate to judicial oversight.  Id.  Where the decision to keep an inmate is reasonably related to legitimate security objectives and is not an exaggerated response to security considerations, there is no denial of due process.  McCord v. Maggio, 910 F.2d 1248 (5th Cir. 1990).  Accordingly, on the record before the Court, there is no apparent violation of the plaintiff's constitutional rights in the decision to double-cell inmates at the prison.

The plaintiff next complains that the defendants violated his constitutional rights by placing him in a cell with a co-inmate who the plaintiff advised he could not live with.  This claim seeks to invoke the plaintiff's Eighth Amendment right to free from cruel and unusual punishment in the form of an unreasonable threat of harm or violence at the hands of another inmate.  Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981); Johnston v. Lucas, 786 F.2d 1254 (5th Cir. 1986).  In order for there to be liability in connection with this cause of action, however, there must have existed on the part of the defendants an intent to cause the plaintiff harm or at least a conscious or callous indifference to the plaintiff's right to be protected from such harm.  Johnston v. Lucas, supra.  "Deliberate indifference" is the appropriate standard to be applied in this context, and this term has been defined as including an

element of "subjective recklessness" as used in the criminal law. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Not every prison fight is actionable. Prison officials must have been both aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they must also have drawn the inference. Id.

Applying the foregoing standard, and notwithstanding the plaintiff's assertion that he informed prison officials that he was unable to live in a cell with the offending co-inmate, the Court finds that the plaintiff has failed to provide sufficient evidence from which a jury could find a violation of his constitutional rights. Specifically, in his original Complaint, the plaintiff alleged only that he informed the defendants that he "couldn't live together" with the referenced co-inmate. He provided no information in the Complaint as to why he could not do so and, in the Court's view, this ambiguous assertion alone would not have been sufficient to place a reasonable security officer on notice of "a substantial risk of serious harm." Nor did the plaintiff provide additional factual information in the administrative grievances which he filed relative to this claim, copies of which were attached to his Complaint. In fact, according to one of these grievances, it appears that the plaintiff's stated reason for not wanting to live with the referenced co-inmate was not because the two inmates were "enemies" or had "bad blood" between them. Instead, as asserted in the grievance, it appears that the plaintiff was simply afraid of being double-celled as a general non-specific matter. This is made clear in the grievance where the plaintiff states that he did not believe he should be double-celled because he "was paranoid and didn't feel comfortable with a cellmate in a tension filled environment." And when he was nonetheless required to

live with the co-inmate, the focus of his stated complaint was not that he perceived himself to be in danger but rather that he had not <u>agreed</u> to live with the co-inmate. Specifically, as stated in the grievance, "I then told them 'how can you force an inmate in the cell with another inmate without the inquiry of them consenting to cellmating.'" These statements do not suggest that the plaintiff and the co-inmate advised prison officials of a specific danger resulting from their cohabitation so as to place the defendants on notice of a substantial risk of serious harm. Rather, the statements reflect only a general non-specific wish on the part of the plaintiff not to be double-celled with this co-inmate or at all. Moreover, the plaintiff does not dispute the defendants' assertion that, upon a check of the plaintiff and co-inmate's enemy lists, it appeared that neither inmate was listed on the other's list of known enemies.

For the foregoing reasons, the Court concludes that there is an insufficient showing upon which a jury could conclude that the plaintiff placed the defendants on notice, in March, 2009, that he faced a substantial risk of serious harm upon being placed in the cell with the offending co-inmate. The defendants have provided sworn affidavits attesting that the plaintiff provided no such notification, and the plaintiff's original Complaint and administrative grievances do not refute these assertions. Instead, it appears that the plaintiff's <u>first</u> assertion before this Court that he advised prison officials in March, 2009, that the two inmates were "enemies" and had "bad blood" between them is in his motion for summary judgment, filed herein more than two years after the incidents complained of. This assertion is inherently

self-serving, is uncorroborated by anything in the record,[4] and is directly contradicted by the plaintiff's statements in his grievance, noted above, which was written at or near the time of the pertinent events.  For this reason, the Court finds that the plaintiff has not come forward with evidence of sufficient caliber and quality to defeat the sworn assertions of the defendants or to allow a jury to conclude that the defendants were deliberately indifferent to a substantial risk of serious harm to the plaintiff's safety.  See Cannon v. Lupau, 2011 WL 1232146 (S.D. Tex., March 31, 2011) (finding that, where plaintiff's summary judgment affidavit directly conflicted with the allegations of his Complaint, his "contradictory factual allegations are insufficient to raise a genuine issue of material fact").  For the same reasons, the defendants cannot be found responsible when, a full five days after being placed in the cell with the co-inmate, the plaintiff was involved in an altercation with the co-inmate.  Accordingly, the defendants are entitled to summary judgment in connection with this claim.

Further, in the alternative, the Court finds that even if the defendants were aware of some level of risk associated with the plaintiff and the co-inmate being placed in the same cell, the plaintiff has failed to show that he sustained a physical injury, greater than de minimis, as a result of the defendants' actions.  In this regard, 42 U.S.C. § 1997e(e) provides that "no federal civil action may be brought by a

---

[4]    In addition to his own self-serving affidavit, the plaintiff provides two Declarations, purportedly written by co-inmates, which address the events of March 11 and 16, 2009.  The first of these, written by co-inmate Noel Dean, is unsworn and so is not properly considered by the Court on motion for summary judgment.  The other, written by co-inmate Ronald Williams, makes no reference to any threats or notification of danger and states only that the plaintiff and co-inmate advised prison officials that "they cannot be housed together."

prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." If a prisoner cannot provide evidence of a physical injury, this statute precludes recovery for mental and emotional damages. See Harper v. Showers, 174 F.3d 716 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, the injury "must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). In the instant case, although the plaintiff alleges in his Complaint that he sustained "pain to shoulder, arm and back, along with small scar on back of neck", he has produced insufficient evidence to substantiate this assertion. In contrast, the defendants have produced a medical report generated on the date of the incident which reflects that the plaintiff was transported to the prison infirmary after the altercation and was "ambulating without difficulty" and had even and unlabored respiration. He voiced no complaints at that time and, upon examination, exhibited "no injuries/bruises/abrasions/deformities/contusions/punctures/tenderness /lacerations [or] swelling." He was prescribed no medication and was released to return to his housing unit with instructions to seek medical attention "as needed". The next day, the plaintiff apparently filled out a request for medical treatment, wherein he noted "problems to [his] shoulder, arm, chest and back," but when he was seen by a health care provider, he had no objective symptomatology and indicated that he "just wants statement noted in file." There is no indication that the plaintiff sought any additional medical attention after that date for injuries he may have received in the altercation, and he even explicitly acknowledged in his Complaint that his injuries were "de minimis". See Complaint at p. 8. This is further consistent with the affidavit of

defendant Dinvant who attests that he only observed the offending co-inmate "shove[]" the plaintiff on March 16, 2009.

As has been recognized by the Fifth Circuit, where objective indications noted in an inmate's medical records reflect no evidence of any injuries consistent with an inmate's allegations, the Court may conclude that the allegations are implausible. See Wilburn v. Shane, 193 F.3d 517 (5th Cir. 1999), citing Wesson v. Oglesby, 910 F.2d 278 (5th Cir. 1990). See also Perry v. Kirkpatrick, 2011 WL 2633770 (E.D. Tex., March 18, 2011). In the instant case, the plaintiff's general and conclusory allegations that he suffered the injuries alleged, which injuries were not discernible to medical professionals, are not sufficient to show that he suffered anything more than a de minimis injury. Accordingly, on the record before the Court, the plaintiff has not overcome the defendants' summary judgment evidence or shown that he is entitled to recovery herein. For this reason as well, the plaintiff's claim is subject to dismissal.

Finally, the plaintiff asserts that his placement in the referenced cell with the offending co-inmate on March 11, 2009, and his transfer to the Louisiana State Penitentiary on March 19, 2009, were undertaken by defendant Spain in retaliation for a prior lawsuit which the plaintiff filed against this defendant in 2008. In this regard, the law is clear that the taking of action against an inmate because of the inmate's exercise of his constitutional rights is itself a violation of the inmate's constitutional rights. Ruiz v. Estelle, 679 F.2d 1115 (5th Cir.), opinion amended in part and vacated in part, 688 F.2d 266 (1982), cert. denied, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); Gibbs v. King, 779 F.2d 1040 (5th Cir.), cert. denied, 476 U.S. 1117, 106 S.Ct. 1975, 90 L.Ed.2d 659 (1986). Specifically, prison officials are not

allowed to retaliate against an inmate because of the inmate's exercise of his First Amendment right to complain to supervisory officials about the alleged wrongful conduct of prison security officers. Id. However, inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

Woods v. Smith, supra, 60 F.3d. at 1166.

The plaintiff's allegations of retaliation in this case are wholly conclusory. The plaintiff states only his subjective belief that the actions of defendant Spain were undertaken because the plaintiff had filed a prior lawsuit against this official. The plaintiff alleges no facts to support this bare-bones assertion. Nor does he provide a chronology of events from which a retaliatory motive may plausibly be inferred. Accordingly, in the absence of any factual allegations suggesting that the defendant's conduct was in fact motivated by retaliatory animus, this claim is subject to dismissal as well.

<u>RECOMMENDATION</u>

It is recommended that the plaintiff's claims asserted against Cadet Speck be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the plaintiff's Motion for Summary Judgment, rec.doc.no. 43, be denied, and that the defendants'

Motion for Summary Judgment, rec.doc.no. 45, be granted, dismissing the plaintiff's claims asserted against the defendants, with prejudice, and that this action be dismissed.

Signed in chambers in Baton Rouge, Louisiana, November 2, 2011.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**